# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:23-cv-00026-MR

| | |
|---|---|
| GEORGE REYNOLD EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL SLAGLE, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint [Doc. 1-1] and Supplemental Complaint [Doc. 9].[1] Also pending are the Plaintiff's "Request for Entry of Default" [Doc. 19]; Motion for a Discovery Scheduling Order [Doc. 20]; Motion for Default Judgment [Doc. 21]; and "Motion to Set Case for Inquest Hearing" [Doc. 23].

## I. BACKGROUND

The pro se Plaintiff, a prisoner in the North Carolina Department of Adult Corrections (NCDAC),[2] filed the Complaint in Wake County Superior Court in June 2022, addressing incidents that allegedly occurred at the

---

[1] Titled "Declaration in Support of Motion to Amend and/or Supplement." The Clerk will be instructed to docket this as a Declaration in Support as the Supplemental Complaint.

[2] Formerly the North Carolina Department of Public Safety (NCDPS).

Mountain View Correctional Institution (MVCI).[3] He names as Defendants: NCDPS; Eddie Buffaloe, Jr., the secretary of NCDPS; Todd Ishee, the NCDPS director of prisons; and Mike Slagle, the warden of MVCI. He asserts that the Defendants violated the First, Eighth, and Fourteenth Amendments when MVCI repeatedly failed to deliver publications he ordered from the Prisoner Revolutionary Literature Fund (PRLF) and the Human Rights Defense Center (HRDF), and failing to provide notice and the opportunity to appeal this "censorship" to the Plaintiff, PRLF, and HRDF. As injury, the Plaintiff claims that he has suffered serious and irreparable harm including "suppression of its political message, being denied to have a mind or think critical." [Doc. 1-1 at 19-20]. He seeks a declaratory judgment; preliminary and permanent injunctive relief; compensatory, punitive, and nominal damages; costs; attorney's fees;[4] a jury trial; and any other relief the Court deems just and appropriate. [Id. at 22-23].

The Defendants removed the action to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, and paid the filing fee.[5] [Doc. 1 (Notice of Removal)].

---

[3] The Plaintiff is now incarcerated at the Lumberton Correctional Institution.

[4] It is unclear why the Plaintiff has requested attorney's fees, as he is unrepresented.

[5] Had the Plaintiff attempted to file this action *in forma pauperis* in federal court, it would have been dismissed under the "three strikes" provision of the Prison Litigation Reform

2

Case 1:23-cv-00026-MR   Document 26   Filed 05/26/23   Page 2 of 15

The Plaintiff filed a Motion to Amend and/or Supplement in which he sought to adds a claim that Defendant Slagle retaliated against him in August 2022, which the Eastern District granted. [Docs. 8, 9, 16]. The Eastern District also granted the Defendants' Motion seeking an extension of time to respond to the Complaint [Doc. 3]; denied the Plaintiff's Motions for entry of default [Doc. 6], for default judgment [Doc. 10], and for a discovery scheduling order [Doc. 15]; and transferred the case to this Court. [Doc. 16].

Upon receiving the case, this Court stayed the Eastern District's deadline for the Defendants to respond to the Complaint until the case was reviewed for frivolity. [Jan 30, 2023 Text-Only Order].

The Plaintiff again seeks the entry of default, default judgment, and for a hearing on the same [Docs. 19, 21, 23], and for the entry of a discovery scheduling order [Doc. 20].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which

---

Act. See Evans v. City of Jacksonville, NC, 5:16-ct-3092-FL (E.D.N.C. Dec. 2, 2016) (summarizing the Plaintiff's litigation history). Cf. Lisenby v. Lear, 674 F.3d 259, 263 (4th Cir. 2012) (the PLRA does not strip a court of subject-matter jurisdiction over a removed case brought by a "three strikes" prisoner).

relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

The Plaintiff attempts to name NCDPS as a Defendant. However, "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, NCDPS is not a "person" under § 1983. See Fox v. Harwood, 2009 WL 1117890, at *1 (W.D.N.C. April 24, 2009). Plaintiff's claims against NCDPS are, therefore, dismissed with prejudice.

It appears that the Plaintiff is attempting to assert claims on behalf of himself as well as on behalf of PRLF and HRDF. [See, e.g., Doc. 1-1 at 11 (asserting that a *publisher* must receive notice and the opportunity to challenge restrictions on a prisoner's receipt of mail)]. As a pro se inmate, the Plaintiff is not qualified to prosecute a class action or assert a claim on behalf of others. See Myers v. Loudoun Cnty. Pub. Schls., 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his own claims in federal court.... The right to litigate for oneself, however, does not create a coordinate right to litigate for others"); Hummer v. Dalton, 657 F.2d 621, 625 (4th Cir. 1981) (prisoner's suit is "confined to redress for violations of his own personal rights and not one by him as knight-errant for all prisoners"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Accordingly, to

the extent that the Plaintiff is attempting to assert claims on behalf of others, they are dismissed.

A state official can be sued in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required": the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," King, 825 F.3d at 223 (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

6

The Plaintiff claims that the Defendants implemented practices, and failed to enforce prison policies, that resulted in the withholding and censorship of publications without any penological justification. As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees).

Accepting the factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, his mail censorship claims will be allowed to pass initial review against Defendants Buffaloe, Ishee, and Slagle.

The Plaintiff claims that the Defendants have implemented practices, and have failed to adhere to prison policy, and that these actions have deprived him of notice and the opportunity to appeal their mail censorship decisions. To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while

7

not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Accepting the factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, his due process claims will be allowed to pass initial review against Defendants Buffaloe, Ishee, and Slagle.

The Plaintiff also claims that the Defendants' actions with regard to his mailed publications violate the Eighth Amendment. The Plaintiff's claims about the alleged mail censorship and due process violations related to such are more appropriately addressed under the First and Fourteenth Amendments, which specifically addresses free speech and procedural due process, rather than the Eighth Amendment, which addresses an inmate's conditions of confinement more generally. See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims") (Rehnquist, C.J., plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted). Even if the Plaintiff's claims

were considered under the Eighth Amendment, they would be dismissed because the conditions he has described are not sufficiently extreme to implicate the Eighth Amendment. See generally Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation") (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). Accordingly, the Plaintiff's Eighth Amendment claims are dismissed.

The Plaintiff claims in his Supplemental Complaint that Defendant Slagle took additional steps to censor his mailed publications in retaliation for the Plaintiff's litigation efforts. [Doc. 9]. An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018). To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment

9

rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id.

Accepting the factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, his retaliation claim will be allowed to pass initial review against Defendant Slagle.

The Plaintiff asserts claims under Article I, Sections 1, 14, 19, and 27 of the North Carolina Constitution. Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725

(1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018); see 28 U.S.C. § 1367(c)(3). A district court may also dismiss the related state claims if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; or (3) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1), (2), and (4).

The Plaintiff cites Article I, Sections 1, 14, 19, and 27 [Doc. 1 at 3-4] and he claims that "Defendants' censorship … [and] failure to respond and provide an explanation with regard to the decision to censor violate the Plaintiff's First, Eighth and Fourteenth. It also violate the Plaintiff's NC state constitution under Article I Sec. 1, 14, 19, 27" [id. 17-18].

Sections 14 and 19 protect the rights of free speech and press and due process, respectively. These rights under the North Carolina Constitution are synonymous with federal free speech and due process rights. See Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 705 (E.D.N.C. 2009) (due process); Sheaffer v. Cty. of Chatham, 337 F. Supp. 2d 709, 729–30 (M.D.N.C. 2004) (free speech). Because the Plaintiff's First and Fourteenth

11

Amendment claims have passed initial review, the Court will exercise supplemental jurisdiction over Plaintiff's Section 14 and 19 claims.

Article I, Section 1 of the North Carolina Constitution has no federal constitutional analogue. Mole v. City of Durham, 279 N.C.App. 583, 586, 866 S.E.2d. 773, 777 (2021). This provision ensures each person the right to "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1. The Plaintiff has failed to allege any facts that would plausibly state a § 1 claim; his citation to that section and his vague and conclusory allegations that the Defendants violated § 1 are insufficient. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Accordingly, the Plaintiff's Article I, Section 1 claim is dismissed.[6]

Article I, Section 27 addresses "cruel or unusual punishments…." N.C. Const. art. I, § 27. This provision offers protections "distinct from, and broader than, those provided under the Eighth Amendment." State v.

---

[6] Nor has any analogous federal claim passed initial review.

Kelliher, 381 N.C. 558, 579, 873 S.E.2d 366, 382 (2022). The Plaintiff has failed to state an Eighth Amendment claim for the reasons discussed *supra*, and his vague and conclusory allegations are also inadequate to state a plausible claim under § 27.[7] See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. The Plaintiff's Article I, Section 27 claim is, therefore, dismissed.

The Plaintiff's "Request for Entry of Default" [Doc. 19], Motion for Default Judgment [Doc. 21], and Motion to Set Case for Inquest Hearing [Doc. 23] are denied because the Defendants' Answer is not due until 21 days from the date of the instant Order on Initial Review of the Complaint. [See Jan. 30, 2023 Text-Only Order]. The Plaintiff's Motion for a Discovery Scheduling Order [Doc. 20] is denied as premature. These Motions are largely duplicative of Motions previously denied by the Eastern District. [See Doc. 16 (Eastern District's Order denying Plaintiff's previously-filed Motions for entry of default [Doc. 6], for default judgment [Doc. 10] and for a discovery scheduling order [Doc. 15]]. The Plaintiff is admonished to govern himself in accordance with this Court's Orders, including the Order of Instructions [Doc. 25]; to familiarize himself with this Court's Local Civil Rules, the applicable Federal Rules; and to refrain from making duplicative, frivolous, or otherwise

---

[7] See Note 6, *supra.*

improper filings. The failure to comply may result in the Court striking any non-compliant filings.

## IV. CONCLUSION

The Complaint and Supplemental Complaint pass initial review against Defendants Buffaloe, Ishee, and Slagle for mail censorship and due process violations, and against Defendant Slagle for retaliation, and the Court exercises supplemental jurisdiction over the Plaintiff's claims under North Carolina Constitution Article I, §§ 14 and 19. The claims against NCDPS are dismissed with prejudice. The remaining claims are dismissed without prejudice. The pending Motions are denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Clerk is instructed to docket the Declaration in Support [Doc. 9] as the "Supplemental Complaint" in a new docket entry.

2. The Complaint [Doc. 1] and Supplemental Complaint [Doc. 9] pass initial review against Defendants Buffaloe, Ishee, and Slagle for mail censorship and due process violations, and against Defendant Slagle for retaliation.

3. The claims against NCDAC (formerly known as NCDPS) are **DISMISSED WITH PREJUDICE.**

4. The Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.

5. The Plaintiff's "Request for Entry of Default" [Doc. 19]; Motion for a Discovery Scheduling Order [Doc. 20]; Motion for Default Judgment [Doc. 21]; and Motion to Set Case for Inquest Hearing [Doc. 23] are **DENIED**.

6. **IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Buffaloe, Ishee, and Slagle, who are alleged to be current or former employees of the North Carolina Department of Public Safety.

The Clerk is respectfully instructed to mail the Plaintiff an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case. No. 3:19-mc-00060-FDW and a copy of this Order.

**IT IS SO ORDERED.**

Signed: May 25, 2023

Martin Reidinger
Chief United States District Judge