**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00026-MR**

| | |
|---|---|
| **GEORGE REYNOLD EVANS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL SLAGLE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for

Summary Judgment [Doc. 45] and their Motion for In Camera Submission

[Doc. 47].

## I. BACKGROUND

The incarcerated Plaintiff George Reynold Evans ("Evans" or simply,

"the Plaintiff"), proceeding pro se, filed this action in Wake County Superior

Court in June 2022, addressing incidents that allegedly occurred at the

Mountain View Correctional Institution ("MVCI").[1]  The Defendants removed

_____

[1] The Plaintiff is now incarcerated at the Johnston Correctional Institution.

the action to federal court.[2]  The unverified Complaint[3] and the verified Supplemental Complaint passed initial review against Defendants Eddie Buffaloe, Jr., Todd Ishee, and Michael Slagle for mail censorship and for violating due process, and against Defendant Slagle for retaliation.  [Doc. 1-1: Complaint; Doc. 9: Supp. Compl.; Doc. 26: Order on Initial Review].  The Court exercised supplemental jurisdiction over the Plaintiff's claims under North Carolina Constitution Article I, §§ 14 and 19.  [Doc. 26: Order on Initial Review at 10-14].  The Plaintiff seeks a declaratory judgment, injunctive relief, damages, costs, attorney's fees,[4] a jury trial, and any other relief the Court deems just and appropriate.  [Doc. 1-1: Complaint at 23].

The Defendants filed the instant Motion for Summary Judgment.  [Doc. 45: MSJ].  Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 49:

---

[2] The action was removed to the U.S. District Court for the Eastern District of North Carolina; it was then transferred to this Court where venue lies.  [See Docs. 1, 16].

[3] The Complaint is signed "This is to verify that I have read the above complaint and state that it is true and correct to the best of my knowledge…."  [Doc. 1-1: Complaint]. This language, however, does not comply with the requirements for verification set forth in 28 U.S.C. § 1746.  As such, the Court will consider the Complaint to be unverified.

[4] It is unclear why the Plaintiff has requested attorney's fees, as he is unrepresented.

2

<u>Roseboro</u> Order].  The Plaintiff filed an Affidavit in response to the Defendants' Motion for Summary Judgment.  [Doc. 51: Plaintiff's Affid.].  The Defendants have not replied, and the time to do so has expired.

The Defendants have also filed a Motion for In Camera Submission, in which they request leave to file examples of disallowed publications for the Court's review, without serving copies of the same on the incarcerated Plaintiff.  [Doc. 47: In Camera Motion].  The Plaintiff has not responded to the Motion, and the time to do so has expired.

These matters are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be

4

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.  FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff, shows the following.

5

Eddie Buffaloe, Jr. has been the Secretary of the North Carolina Department of Public Safety ("NCDPS") since November 1, 2021.[5]  Todd Ishee was the Secretary of the North Carolina Department of Adult Corrections ("NCDAC") and the NCDPS Commissioner of Prisons during the relevant time.[6]  Mike Slagle was the Warden of the MVCI; he oversaw all operations at the facility to ensure safety and security of offenders, staff, and the public.  [Doc. 46-1: Slagle Decl. at ¶ 2].

At MVCI, mailroom staff processed incoming and outgoing mail, legal mail, and publications.  [Doc. 46-4: Carroll[7] Decl. at ¶ 2].  All received mail was routed to the offender to whom it was addressed.  [Id. at ¶ 9].

Mailroom staff also reviewed incoming publications for compliance with NCDAC policy.  [Id.; Doc. 46-5: MSJ Ex at 1-31 (Policy D.0100, Publications Received/ Processed by Inmates)].  Incoming publications that were on the Publication Review Committee's ("PRC") disapproved publication list would not be provided to the inmate and there was no opportunity to appeal.  [Doc. 46-4: Carroll Decl. at ¶ 3; Doc. 46-1: Slagle Decl. at ¶ 3].

---

[5]  See  www.ncdps.gov/about-dps/office-secretary/leadership/eddie-m-buffaloe-jr  (last accessed Jan. 28, 2025); Fed. R. Evid. 201.

[6] See https://governor.nc.gov/news/press-releases/2022/09/22/governor-cooper-appoints-department-adult-correction-secretary (last accessed Jan. 28, 2025); Fed. R. Evid. 201.

[7] Mail Room Administrative Associate Angela Carroll is not a defendant in this case.

If a publication was not on the PRC disapproved publication list, mailroom staff would evaluate its content pursuant to NCDAC policy. [Id.; id.; see Doc. 46-5: MSJ Ex 1-31 (Policy D.0100)]. Publications meeting the criteria for disapproval would be flagged by mailroom staff for further review. [Doc. 46-4: Carroll Decl. at ¶ 2]. Warden Mike Slagle or his designee reviewed flagged publications and decided whether to allow or to disapprove them. [Id.; Doc. 46-1: Slagle Decl. at ¶ 3]. Slagle made these decisions uniformly based on prison policies; he never made decisions based on an inmate's race or personal characteristics. [Doc. 46-1: Slagle Decl. at ¶ 5]. If Slagle or his designee determined that a publication was disapproved, a notice would be sent to the offender. [Doc. 46-4: Carroll Decl. at ¶¶ 3, 9; Doc. 46-1: Slagle Decl. at ¶ 3]. The inmate could choose to accept a disapproval or to appeal it. [Id. at ¶ 3; id. at ¶¶ 3-4].

Appeals were sent to the PRC, which would independently review the publication and make its own decision as to whether the publication should be allowed or censored. [Doc. 46-6: Fox Decl. at ¶ 3; Doc. 46-1: Slagle Decl. at ¶ 3]. If the PRC approved a publication, such would be sent to the offender. [Doc. 46-4: Carroll Decl. at ¶ 3; Doc. 46-5: MSJ Ex at 1-31 (Policy)].

7

If the PRC disapproved a publication, it would be destroyed or diverted to an outside contact; the publication would also be added to the banned publication list that applied to all offenders. [Doc. 46-6: Fox Decl. at ¶ 3].

Warden Slagle was not the final decisionmaker in determining whether a particular publication should be banned. [Doc. 46-1: Slagle Decl. at ¶ 4]. No offender was ever denied a publication based on Warden Slagle's censorship decisions because such could always be appealed and independently reviewed by the PRC.[8] [Id.].

During his tenure at MVCI, the Plaintiff received copies of Prison Legal News ("PLN")[9] and Prisoners Revolutionary Literature Fund ("PRLF"), both of which were censored for content including violence and disorderly acts. [Doc. 46-4: Carroll Decl. at ¶ 5; see Doc. 51: Plaintiff's Affid. at ¶ 1; Doc. 9: Plaintiff's Decl. at ¶ 3]. The Plaintiff appealed three publication decisions between December 1, 2021 and January 31, 2023, while he was at the MVCI. [Doc. 46-6: Fox Decl. at ¶ 4]. They are:

| | |
|---|---|
| 1/7/2022 | PLN |
| 9/12/2022 | PRLF Issues 763 and 764 |

---

[8] The Court need not accept the Plaintiff's contentions that "Defendant Slagle flagged my publication because it was stopped until I appealed" and "Slagle acted personally because he took action to stop publication" because they are confusing, speculative, and are not based on the Plaintiff's personal knowledge. [Doc. 51: Plaintiff's Affid. at ¶¶ 11, 13].

[9] PLN is published by the Human Rights Defense Center. [See Doc. 46-8: MSJ Ex at 9].

9/12/2022      PRLF Issues 761 and 762

[Doc. 46-6: Fox Decl. at ¶ 4]. Slagle stopped the Plaintiff from receiving issues of the PRLF after being served with the Plaintiff's complaint in a civil rights case on August 9, 2022. [Doc. 9: Plaintiff's Decl. at ¶¶ 3-4]. Slagle did not provide the Plaintiff with notice of the PRLF denials, so the Plaintiff raised the issue in grievances and notified Secretary Ishee of Slagle's actions. [See Doc. 51: Plaintiff's Affid. at ¶¶ 4-6; see also id. at ¶ 9 ("Todd Ishee never enforce his policy to stop Michael Slagle.")] (errors uncorrected).

The PRC reviewed these disapprovals on appeal and affirmed the censorship of the five affected publications.[10] [See Doc. 46-6: Fox Decl. at ¶ 4]. The publications were returned to the prison. [Doc. 1-1 Compl. Ex at 27 (Feb. 22, 2022 Step One Response); see Doc. 46-5: MSJ Ex at 5 (Policy .0105(d)]. The Plaintiff never received his copy of a December 2021 publication.[11] [Doc. 51: Plaintiff's Affid. at ¶ 8]. Inmates could ask mailroom staff to print out copies of unbound publications such as PLN. [Doc. 46-4:

_____

[10] The Plaintiff alludes to two PRC reversals that occurred within 90 days of each other. [Doc. 9: Plaintiff's Decl. at ¶ 12]. Insofar as this refers to PRC reversals other than those summarized by the Defendants, such is rejected as vague and conclusory. See Brown v. Flowers, 196 F. App'x 178, 182 (4th Cir. 2006) (vague and conclusory affidavits are insufficient to stave off summary judgment motions).

[11] This appears to refer to the January 7, 2022 PLN approval; to the extent that this refers to a different publication, it is rejected as vague and conclusory. See Brown, 196 F. App'x at 182.

9

Carroll Decl. at ¶ 10]. Carroll printed many issues of publications for the Plaintiff that he claimed not to have received. [Id.]. Carroll always complied with Plaintiff's printing requests so long as the materials he sought were not disapproved by the PRC. [Id.].

Two publications were denied without the opportunity to appeal because they were already on the PRC's banned publication list:

| 5/23/2022 | PLN Vol. 33, #2[12] | (code H) |
| 1/3, 1/4/2023 | PLN Vol. 33, #12[13] | (code B) |

[Id. at ¶ 5]. The PRC had disapproved PLN volume 33, numbers 2 and 12 because they "[d]epict[] violence; racist group plotting to kill offenders" and "[d]escribe[] tactics used to escape from a prison bus," respectively. [Doc. 46-7: MSJ Ex at 3; Doc. 46-8: MSJ Ex at 2].

While the Plaintiff was incarcerated at MVCI, he received a Covid stimulus check. [Doc. 46-1: Slagle Decl. at ¶ 6]. The Plaintiff refused to endorse the check. [Id.; Doc. 51: Plaintiff's Affid. at ¶ 15]. Consequently, the check could not be deposited in the Plaintiff's prison trust account and it had to be returned to sender. [Doc. 46-1: Slagle Decl. at ¶ 6]. The Plaintiff was

---

[12] An article from this issue has been submitted for *in camera* review. [Doc. 46-9: MSJ Ex at 1-3 (Exhibit 3(c))].

[13] An article from this issue has been submitted for *in camera* review. [Doc. 46-9: MSJ Ex at 1-2 (Exhibit 3(d))].

instructed to contact the IRS to make changes regarding the check's delivery. [Id.]. The record does not support Plaintiff's assertion that Slagle ordered the check's return to the IRS to retaliate against the Plaintiff.[14] [Id.].

## IV. DISCUSSION

### A. Supervisory Liability

To establish liability under § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). However, supervisory liability may attach under § 1983 if a plaintiff can establish that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive

---

[14] The Court need not accept Plaintiff's contradictory statements about Defendant Slagle's alleged retaliation. [Doc. 9: Supp. Compl. at ¶ 11 ("[Slagle] has sent back my stimulus check to the IRS as retaliation for the lawsuits I filed against him"); Doc. 51: Plaintiff's Affid. at ¶ 7 ("I did not say that the defendant retaliated against me by sending my stimulus check back to IRS….")]; see Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct").

practices"; and (3) and "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

The Plaintiff has not forecast evidence that the Defendants were deliberately indifferent to, or tacitly authorized, a violation of his rights; nor has he forecast evidence of an affirmative causal link between any Defendant's inaction and a constitutional injury. It appears that the Plaintiff is attempting to rely on the doctrine of respondeat superior, which is insufficient. See Monell, 436 U.S. at 694; Shaw, 13 F.3d at 791.

Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's supervisory claims. The Plaintiff's claims that the Defendants violated his rights personally will be discussed individually *infra*.

### B.    Mail

As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees). For instance, prison officials may inspect an inmate's outgoing

and incoming mail because such is reasonably related to legitimate penological interests. See generally Wolff v. McDonnell, 418 U.S. 539, 575 (1974); Turner, 482 U.S. at 89; see also Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999) (opening and inspecting a prisoner's outgoing mail is, "[w]ithout question," reasonably related to legitimate penological interests); Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (a "necessary implication" of Altizer is that prison officials may open and inspect a prisoner's incoming mail).

Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional magnitude"); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation.").

The Plaintiff has not forecast evidence that Defendant Buffaloe was personally involved in any decisions regarding the Plaintiff's mail. As for Defendant Ishee, the forecast of evidence demonstrates, at most, that the Plaintiff notified Ishee of his disagreement with Slagle's publication denial. Defendant Ishee's mere knowledge of an alleged deprivation, however, is

13

insufficient to show the existence of a genuine dispute that he violated the Plaintiff's constitutional rights.  See Williamson, 912 F.3d at 171.

With regard to Defendant Slagle, the forecast of evidence demonstrates that Slagle lacked the authority to make final decisions regarding the Plaintiff's publications.  He made only intermediate decisions about flagged publications, three of which were reversed on appeal.  Slagle's decisions, at most, delayed the Plaintiff's receipt of five publications.  These isolated incidents of temporary denial do not rise to the constitutional level. See Buie, 717 F.2d at 926.  As to publications that the Plaintiff was denied because they were on the PRC's disapproval list, the forecast of evidence shows that these were withheld based on legitimate penological interests, i.e., policy prohibiting discussions of violence and escape.

The Plaintiff further contends in his verified Supplemental Complaint that "Defendant Slagle has stopped [the Plaintiff's] mail to Department of Justice, SBI, and local District Attorney."  [Doc. 9: Supp. Compl. at ¶ 14]. This is too vague and conclusory to demonstrate the existence of a genuine dispute that Defendant Slagle violated the Plaintiff's constitutional rights. See Brown v. Flowers, 196 F. App'x 178, 182 (4th Cir. 2006) (vague and conclusory affidavits are insufficient to stave off a summary judgment motion).

The Defendants' Motion for Summary Judgment will, therefore, be granted on the Plaintiff's claims of interference with his mail.

## C.    Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of a legitimate life, liberty, or property interest by governmental action.  See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) ("an individual claiming a protected interest must have a legitimate claim of entitlement to it"); Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).  Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Due  process in the context of prisoner mail is generally satisfied by: (1) appropriate notice; (2) a reasonable opportunity to challenge the initial determination; and (3) an ultimate decision by a disinterested party not privy to the initial censorship determination. Hopkins v. Collins, 548 F.2d 503, 504 (4th Cir. 1977) (addressing incoming mail).

The forecast of evidence viewed in the light most favorable to the Plaintiff demonstrates that Defendant Slagle disapproved several PRLF issues without notifying the Plaintiff; however, the Plaintiff nevertheless filed a grievance with respect to these issues and successfully appealed to the PRC. The Plaintiff had a reasonable opportunity to challenge Slagle's decisions notwithstanding the lack of notice, and he ultimately prevailed such that no deprivation of a cognizable interest occurred. See Tobar v. Armstead, No. SAG-20-3780, 2021 WL 1375581, *1 (D.Md. April 12, 2021) ("there is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process") (quoting Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995)); Thompson v. Robinson, No. 2:11-cv-642, 2011 WL 10581990, at *2 (E.D.Va. Dec. 12, 2011) (an inmate received all the process he was due despite a defective disciplinary hearing because "the prison's procedure *as a whole* led to the vindication of his procedural rights…."). The temporary delay attributable to Defendant Slagle's intermediate rejection of those publications does not rise to the level of a due process violation. See, e.g., Tobar, 2021 WL 1375581 (inmate's 15-day stay in administrative segregation before his disciplinary conviction was overturned was not an atypical or significant). To the extent that the Plaintiff complains he did not receive a publication following his successful

appeal, he has failed to forecast any evidence attributing that lack to the Defendants. [See, e.g., Doc. 46-4: Carroll Decl. at ¶ 10 (Plaintiff could request printouts from the mailroom)].

The forecast of evidence also shows that the Plaintiff was denied two publications that were on the PRC's disapproval list, which Plaintiff had no opportunity to appeal. However, as a prisoner, the Plaintiff had no protected interest in publications discussing violence and escape. See generally Bell v. Wolfish, 441 U.S. 520, 554 (1979) ("due process rights of prisoners … are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution"); Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (holding that a prisoner had no property interest in contraband, and therefore, its destruction did not implicate any due process concerns); Bagley v. Lanham, 23 F.3d 399 (4th Cir. 1994) ("Prison officials are authorized to summarily seize contraband.") (table). When these prohibited publications were withheld pursuant to policy, the Plaintiff was not deprived of any legitimate interest for which due process was required. Id.

The Plaintiff has failed to demonstrate the existence of a genuine dispute that any Defendant denied him due process and, therefore, summary judgment will be granted for the Defendants on this claim.

**D.    Retaliation**

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits.  See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017).  Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them.  See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

A First Amendment retaliation claim requires proof that (1) the plaintiff engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.  Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted).  Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

While the forecast of evidence demonstrates that Defendant Slagle stopped the Plaintiff's RPLF issues after the Plaintiff engaged in a protected activity (i.e., serving Slagle with a civil complaint), the forecast of evidence is insufficient to support each element of a retaliation claim.  As discussed

*supra*, Slagle only conducted intermediate review of flagged publications that were approved on appeal. Even if this temporary deprivation could be considered an adverse action, the Plaintiff's retaliation claim still fails because the Plaintiff has not forecast sufficient evidence of causation. He merely relies on temporal proximity between the service of his civil complaint and Slagle's intermediate review of some publications, which is "too slender a reed" upon which to rest his retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993).

As for the Plaintiff's COVID stimulus check, it appears that the Plaintiff has abandoned his retaliation claim. [Doc. 51: Plaintiff's Affid. at ¶ 7 ("I did not say that the defendant retaliated against me by sending my stimulus check back to IRS….")]. Even if this claim were not abandoned, summary judgment would be granted for the Defendants because the forecast of evidence demonstrates that check's return was due to the Plaintiff's admitted refusal to endorse it, rather than any retaliation by Slagle.

For all of these reasons, the Defendants will be granted summary judgment on the Plaintiff's retaliation claims.

## E. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably

believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

As discussed *supra*, the Plaintiff has not presented a forecast of evidence that the Defendants violated his constitutional rights. As such, summary judgment for the Defendants would also be proper on this ground.

## F.    Supplemental Jurisdiction

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's claims for violations of Article I, Sections 14 and 19 of the North Carolina Constitution. [See Doc. 26: Order on Initial Review]. Because the Plaintiff's claims under the North Carolina Constitution are premised on the same allegations as his § 1983 claims, these claims share the same fate and

will be dismissed.  <u>See</u> Sections 1-3, *supra*.  Accordingly, summary judgment is granted for the Defendants on the Plaintiff's claims for violations of the North Carolina Constitution.

### G.    Motion for In Camera Submission

The Defendants have filed a Motion requesting leave to file two PLN articles ex parte, and for the Court to inspect them in camera. [Doc. 47: Motion for In Camera Filing; <u>see</u> Doc. 46-9: MSJ Ex at 1-3 (Exhibit 3(c)); Doc. 46-10: MSJ Ex at 1-2 (Exhibit 3(d))].

Written pleadings must generally be served on all parties.  Fed. R. Civ. P. 5.  Here, enforcing that Rule would undermine the PRC's finding that the articles violate policy D.0109(b) and (h) because they discuss escape techniques and are likely to provoke violence.  [<u>See</u> Doc. 46-5: MSJ Ex at 8 (Policy)].   The Defendants' Motion is, therefore, granted and the Court accepts Exhibits 3(c) and (d) ex parte for in camera review.

## V.    CONCLUSION

For the reasons stated herein, the Defendants' Motion for In Camera Submission is granted, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 45] is

   **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

2. The Defendants' Motion for In Camera Submission [Doc. 47] is

   **GRANTED** as stated in this Order.

**IT IS SO ORDERED.**

Signed: February 3, 2025

Martin Reidinger
Chief United States District Judge

22